Criminal No. 5:23-CR-210-1FL
Civil No. 5:26-CV-49-FL

| | | |
|---|---|---|
| BRIEANIA SHIDAE PINNOCK, | ) | |
| | ) | |
| Petitioner, | ) | **RESPONDENT'S** |
| | ) | **MEMORANDUM IN SUPPORT** |
| v. | ) | **OF THE MOTION TO DISMISS** |
| | ) | **PETITIONER'S MOTION TO** |
| UNITED STATES OF AMERICA, | ) | **VACATE** |
| | ) | |
| Respondent. | ) | |

Petitioner Brieania Shidae Pinnock (Petitioner) pleaded guilty to conspiring to commit sex trafficking by force, fraud or coercion of minor, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1), all in violation of 18 U.S.C. § 1594(c), and manufacturing/producing child pornography and aiding and abetting, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1), and related charges, under the terms of a written plea agreement that contained a postconviction waiver provision. After a thorough Rule 11 advisement of Petitioner's rights, the Clerk placed Petitioner under oath, and Petitioner admitted her guilt. The Court sentenced Petitioner to 216 months' imprisonment. Petitioner filed the instant motion to vacate, alleging her counsel, Myron T. Hill (Hill) rendered ineffective assistance of counsel. The Court should dismiss the motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure lfor failure to state a plausible claim for relief because Petitioner's allegations are contrary to her sworn statements and the record.

# BACKGROUND

In June 2023, a grand jury in this District issued an eight-count indictment that charged Petitioner and Trinity Sky Alston (Alston) with conspired with each other and others in the sex trafficking of "a minor having the initials J.B.," in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1), all in violation of 18 U.S.C. § 1594(c) (Count One), and sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1) (Count Two). [D.E. 1]. Further, that Petitioner and Alston, "aiding and abetting [each other], did knowingly employ, use, persuade, induce, entice, and coerce" JB to manufacture/produce of child pornography, all in violation of 18 U.S.C. §§ 2251(a), (e), 2 (Count Three), travel interstate or use of the facilities of interstate commerce to promote an unlawful business enterprise; and aiding and abetting, in violation of 18 U.S.C. §§ 1952(a)(3), 2 (Count Four), and distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b) (Counts Five through Eight). *Id.*

In July 2023, Attorney Myron Hill (Hill) was appointed to represent Petitioner. [D.E. 26].

In August 2024, Petitioner, under the terms of a written plea agreement that included a post-conviction waiver in Paragraph 2(c) that barred Petitioner from contesting his "conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255 excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial *misconduct not known to the Defendant at the time of the Defendant's guilty plea,*" and a series of stipulations in Paragraph 5, including an agreement that Petitioner's criminal history under the

2

guidelines was criminal history category II, entered a guilty plea to Counts One and Three. [D.E. 54, D.E. 81, ¶ 2.c. (emphasis added), ¶ 5.a]. Further, Petitioner in Paragraph 3(c) acknowledged that she understood that at sentencing the Court would take the United States Sentencing Guidelines into account but that the Court was not bound by the Guidelines. [D.E. 81, ¶ 3(c)].

At the Rule 11 hearing, the Court first informed Petitioner and other defendants of their constitutional and trial rights, including the fact that by pleading guilty with and without a plea agreement they were waiving certain rights. [D.E. 123 at 3–10]. Thereafter, the Court took up Petitioner's individual case. *Id*. at 10. Petitioner acknowledged that: (1) she and Hill fully discussed her charges and the case, (2) she understood the charges against her, and (3) she understood what was happening at the arraignment. [DE. 123 at 10–14]. The Court then asked Hill if had any trouble communicating with Petitioner or if there was any reason to doubt Petitioner's competence to proceed and he said, "No, your Honor." *Id*. at 14. After the prosecutor also said he did not doubt Petitioner's competency, the Court found Petitioner competent to proceed. *Id*.

The Court asked Petitioner if she was satisfied with Hill's "advice and counsel to [Petitioner] in this matter?" *Id*. Petitioner replied, "Yes, sir." *Id*. Petitioner then acknowledged that she understood the Court's explanation of her rights, how she might be sentenced, that she received the indictment and that she understood each charge. *Id*. at 14–15. After the Court reviewed the maximum penalties of each count

in the indictment and asked Petitioner if she understood the maximum punishments, Petitioner replied, "Yes, sir." [DE. 123 at 15–19].

The Court then reviewed the plea agreement with Petitioner. *Id*. at 19–23. Importantly, the Court asked Hill if he had conveyed all formal plea offers by the government to Petitioner. *Id*. at 19. Hill replied, "Yes, your honor." *Id*. The Court then addressed Petitioner and asked Petitioner if she signed the plea agreement and the sealed supplement and Petitioner said, "Yes, sir." *Id*. Petitioner then confirmed that: (1) Petitioner intended to plead guilty to Counts One and Three of the Indictment, (2) Petitioner had an opportunity to read and discuss the plea agreement and the sealed plea memorandum with Hill before she signed it, (3) Petitioner understood "the terms, the language, the words, the sentences, even any legal phrases that [were] used in the plea agreement after [Petitioner] discussed it with [Hill]," (4) Petitioner understood that by entering into the plea agreement and entering a guilty plea, Petitioner will have waived or given up her right to appeal or to collaterally attack all or part of her conviction or sentence, (5) that no one made any other or different promises to Petitioner to get her to plead guilty other than what was contained in the plea documents, (6) That no one threatened Petitioner in any way in an effort to persuade her to either accept the plea agreement or to plead guilty in the case, and (7) that Petitioner was pleading guilty of her own free will and because she was in fact, guilty. *Id*. at 19–21.

The Court then asked Petitioner if she understood that the offenses she was pleading to were felony offenses and if the Court accepted her guilty pleas and found

4

her guilty, Petitioner may lose "valuable civil rights," including the right to vote, hold public office, to serve on a jury, and to possess a firearm, and that if Petitioner was not a United States citizen, her guilty pleas may affect her residence or immigration status and Petitioner replied, "Yes, sir." [DE. 123 at 21.

Importantly, the Court then asked Petitioner if all her answers to the Court's questions were true and Petitioner said "Yes, sir." *Id.* at 21–22. When the Court offered Petitioner an opportunity to have additional time to think about her guilty pleas or to discuss your case with Hill, Petitioner declined, and she then entered guilty pleas to Counts One and Three. *Id.* at 22.

The Court then read Count One to Petitioner and asked Petitioner, "Did you do all that?" *Id.* at 22–23. Petitioner replied, "Yes, sir." *Id.* at 23. The Court then read Count Three to Petitioner and once more asked her, "Did you do that?" And Petitioner once more replied, "Yes, sir." *Id.* at 23.

The prosecutor then made a detailed proffer of the evidence the government would prove a trial if Petitioner had not pleaded guilty, including messages establishing Petitioner knew the victim was a minor and that Petitioner and Alston conspired to have the victim engage in commercial sex acts and produce child pornography. *Id.* at 24–27. The Court then asked Hill if he wanted to respond to the Government's proffer and he declined. *Id.* at 27. The Court then asked Petitioner if she heard and understood the description of the criminal conduct that the prosecutor had provided to the Court and she said, "Yes, sir." *Id.* at 27. When the Court offered Petitioner an opportunity to dispute anything the prosecutor said, Petitioner

5

declined. [DE. 123 at 27]. The Court then accepted Petitioner's guilty pleas and conditionally approved Petitioner's plea agreement. *Id.*

The U.S. Probation Office determined that based on Petitioner's guilty plea to only Counts One and Three, and her prior convictions, Petitioner's was a criminal history category IV, which combined with her total offense level 39 resulted in a recommended advisory guideline range of 292–365 months' imprisonment. [D.E. 77, ¶¶ 30, 39]. The U.S. Probation Office, noted however, that had Petitioner pleaded guilty to the dismissed counts or been found guilty after trial of those counts, Petitioner's advisory guideline range would have been life imprisonment. *Id.*, ¶ 70. Further, U.S. Probation noted that but for the plea agreement stipulation to criminal history category III, Petitioner's criminal history category was IV, which would have resulted in a total offense level 43 and yield a life term of imprisonment. *Id.*

The U.S. Probation Office prepared a draft presentence investigative report (PSR). [D.E. 64]. Hill filed two factual objections to the report. [D.E. 69]. The first objection was to correct the sentencing date. *Id.* at 1. The second factual objection noted Petitioner's request for mental health treatment. *Id.* at 2. Hill made no objections to the final PSR. [D.E. 77 at 18].

Prior to sentencing Hill filed a sentencing memorandum requesting the Court sentence Petitioner to the mandatory minimum sentence, 180 months' imprisonment. [D.E. 86 at 14]. Hill based the memorandum on the circumstances of Petitioner's and J.B. meeting, Petitioner's poverty at the time, and her difficult and abusive childhood. *Id.* at 14–16. Hill also cited Petitioner's efforts to improve herself while in pretrial

6

detention, including her participation in support classes, online education courses, and health condition. *Id*. 16–17.

In March 2025, the Court sentenced Petitioner to 216 months' imprisonment, 10 years' supervised release, and ordered Petitioner to pay a $200 special assessment. [D.E. 80]. The Court held imposition of restitution open for 90 days. *Id*. Prior to imposing sentence, the Court noted that Petitioner's plea agreement included several favorable stipulations and that without those stipulations, Petitioner had faced an advisory guideline of life imprisonment. [D.E. 86 at 6]. After hearing the parties' argument on the appropriate sentence and considering the sentencing factors under 18 U.S.C. § 3553(a), the Court imposed the aforementioned sentence. *Id*. at 22.

The Court also informed Petitioner of her right to appeal her conviction or sentence and told Petitioner that if she chose to appeal, Petitioner must file the appeal within 14 days of the date of her judgment on the docket. *Id*. at 31. The Court reminded Petitioner of the plea agreement appellate waiver and stated Petitioner could present any theory challenging the waiver's enforceability and that Petitioner should "move quickly" because she had 14 days to do so. *Id*. The Court then asked Hill if Petitioner had any questions about Petitioner's appellate rights. *Id*. Hill said "No, Your Honor." And Petitioner said, "No." *Id*. at 31–32.

On January 30, 2026, Petitioner filed the instant motion to vacate. [D.E. 117].

### LEGAL STANDARD

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in

violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The movant bears the burden of proving the grounds for relief in a collateral attack by the preponderance of evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

A motion made to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted tests the legal and factual sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-63, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Stanford v. United States*, No. 5:09-CR-202-D, 2014 WL 2157440, at *2 (E.D.N.C. May 23, 2014). In evaluating whether to grant a motion to dismiss under Rule 12(b)(6) a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302 (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000)). Further, a court may take judicial notice of its own files without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56. *Williams v. United States*, No. 5:15-CR-111-D, 2022 WL 628636 at * 2 (E.D.N.C. Mar. 3, 2022). When a court conducts an analysis of a § 2255 motion, the court is not confined to the motion, but may also consider its files and records of the case. *Id.*

<center>**ARGUMENT**</center>

Petitioner argues Hill rendered ineffective assistance of counsel by "rushing" Petitioner into pleading guilty without conducting an "investigation" of information provided by Petitioner's family or bringing Petitioner's phone to her during a client visitation (Ground One). [D.E. 117 at 4, D.E. 117-1 at 2–3]. Petitioner also alleges Hill failed to "explore plea possibilities" and that had he done so the Court would have imposed a "lesser sentence." [D.E. 117 at 5]. Petitioner next alleges Hill failed to inform the Court of her pretrial detainee rehabilitative changes and had Hill done so, the Court would have imposed a lesser sentence (Ground Two). [D.E. 117 at 7]. Lastly, Petitioner asserts Hill rendered deficient performance by falsely telling Petitioner that he would inform the Government that "we [presumably the victim, J.B., and Petitioner] were all prostituting" and had Hill done so, that information would show Petitioner was also a victim (Ground Three). [D.E. 117 at 8, D.E. 117-1 at 4]. Petitioner also attached a document in which she amplifies her claims and further alleges Hill did not "adequately" explain the terms of the plea agreement. [D.E. 117-1 at 4]. These claims are meritless because they contradict the record and Petitioner's sworn statements at the Rule 11 hearing.

**Petitioner cannot establish his counsel provided ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).**

To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged requirements of *Strickland*. *Id.* at 687. Under the first prong in *Strickland*, a petitioner "'must show that counsel's performance fell below an objective standard of reasonableness.'" *Sharpe v. Bell*, 593 F.3d 372, 382 (4th Cir.

<center>9</center>

2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). "Judicial scrutiny of counsel's performance must be highly deferential, and a reviewing court must avoid the biases of hindsight." *Id.* (internal quotation marks and citation omitted). Under the second prong in *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Further, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner does not prove either prong under *Strickland*, a court does not need to consider the other prong. *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013).

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, courts apply a "'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). "Further, a petitioner who alleges ineffective assistance of counsel after the entry of a guilty plea must meet an even higher burden." *Koonce v. United States*, No. 3:25-cv-81561, 2026 U.S. Dist. LEXIS 87288, at *8 (W.D. Va. Apr. 20, 2026) (unpublished).

Here, Petitioner's claims that Hill—(1) "rushed" her into pleading guilty and did not adequately explain the terms of the plea agreement [D.E. 117 at 4, D.E. 117-

10

1 at 4], (2) did not investigate her case [D.E. 117 at 4, D.E. 117-1 at 2–4], (3) failed to "explore plea  possibilities" [D.E. 117 at 5], (4) was ineffective for "allowing" her to plead guilty under a plea agreement that permitted sentencing under mandatory sentencing guidelines [D.E. 117-1 at 1, 3], (5) failed to tell the Government that Petitioner and the victim "were all prostituting" [D.E. 117 at 8], and (6) that Hill coerced Petitioner into allowing the destruction of her phone [D.E. 117-1 at 3]—fail because when the Court questioned Petitioner during the Rule 11 proceeding, Petitioner stated under oath that she and Hill fully discussed her charges and the case, she understood the charges against her and the terms of the plea agreement, understood what was happening at the arraignment, and that she was satisfied with Hill's legal services. [D.E. 123 at 3–21, *see also* D.E. 81, ¶ 3(c)¶ (acknowledging in plea agreement that the sentencing guidelines were not mandatory)].

Petitioner's sworn statements made during the Rule 11 colloquy "carry a strong presumption of verity" and therefore the statements pose an impressive impediment in subsequent collateral proceedings. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "Thus, absent extraordinary circumstances, the truth of a defendant's sworn statements during a properly conducted Rule 11 colloquy is conclusively established, and a court may dismiss a § 2255 motion without an evidentiary hearing where the claims necessarily rely on allegations that contradict those statements." *Midkiff v. United States*, No. 3:24-cv-00056, 2026 U.S. Dist. LEXIS 44932, at *11-12 (S.D.W. Va. Feb. 5, 2026); *see also United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005). In addition, to the extent Petitioner claims Hill misadvised her regarding the terms

11

of the plea agreement or the sentencing guidelines, Petitioner cannot establish prejudice under *Strickland* because the Court's advisement of Petitioner's rights and the sentencing procedures corrected any misadvise. *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995).

Moreover, Petitioner's plea agreement barred postconviction motions in this instance. The alleged facts that make up Petitioner's pre-plea claims fall within the scope of her plea agreement waiver and are therefore barred under the terms of the waiver which bar Petitioner from bringing collateral challenges, "excepting … [a] motion based upon grounds of ineffective assistance of counsel … not known to the Defendant *at the time of the Defendant's guilty plea,* [D.E. 81, ¶ 2(c) (emphasis added)], because theses alleged facts were known to Petitioner prior to her entering her guilty pleas.

Petitioner also claims Hill rendered ineffective assistance by failing to inform the Court of Petitioner's pretrial detainee rehabilitative efforts and did not lodge factual objections to the PSR. [D.E. 117 at 7, D.E. 117-1 at 2]. Petitioner's post-plea claim that Hill did not inform the Court of Petitioner's pretrial detention rehabilitative efforts fail because it is not supported by the record. The record shows Hill filed a sentencing memorandum in which he requested the Court sentence Petitioner to an 180-month term of imprisonment, based in part, on Petitioner's poverty, difficult and abusive childhood, and her pretrial detention rehabilitative efforts. [D.E. 86 at 14–16].

Petitioner also claims that Hill's legal representation was deficient because he did not object to the final PSR. [D.E. 117-1 at 2. This claim also fails because the dates at issue when Petitioner sex trafficked the minor and now claims she was not present—presumably June 13, 2022 and June 23, 2022 [D.E. 77, ¶ 19]—relate to events known to Petitioner prior to her entering her guilty pleas and flatly contradict her sworn admissions of guilt during her Rule 11 colloquy. As such, this claim fails. *Lemaster*, 403 F.3d at 221–22.

## CONCLUSION

WHEREFORE, for the above-stated reasons, the Court should dismiss Petitioner's motion to vacate.

Respectfully submitted this 15th day of May, 2026.

<div style="margin-left:40%">

W. ELLIS BOYLE
United States Attorney

*/s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
U. S. Attorney's Office Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
E-mail: mike.james@usdoj.gov
N.Y. Reg. No. 2481414
Attorney for the United States

</div>

13

<div align="center">**CERTIFICATE OF SERVICE**</div>

This is to certify that on this 18th day of May, 2026, undersigned counsel or a designee filed the foregoing Memorandum in Support of the Motion to Dismiss via the District Court's CM/ECF Document Filing System and prepared a copy of the same which will be placed in the U.S. Mail on May 18, 2026 addressed to:

Brieania Shidae Pinnock
(Reg. No. 67408-510)
FCI Tallahassee
Federal Correctional Institution
P.O. Box 5000
Tallahassee, FL 32314

Pro Se

W. ELLIS BOYLE
United States Attorney


*/s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
U. S. Attorney's Office Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
E-mail: mike.james@usdoj.gov
N.Y. Reg. No. 2481414
Attorney for the United States